FILED
Clerk's Office
USDC Mass.
Date 7-13-05
By Kim Abcuia
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **CRIM. NO. 05-10033-JLT** |
| | ) |
| **HAMMAN MOUSLI,** | ) |
| **DEFENDANT** | ) |

## SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, through Michael J. Sullivan,

the United States Attorney, and the undersigned Assistant United

States Attorney, opposes to defendant Hammam A. Mousli's (the

"Defendant") Motion to Suppress (the "Motion"), and respectfully

submits this memorandum in support of its opposition.

### SUMMARY OF GOVERNMENT'S POSITION

The search warrant described the premises in appropriate

detail, including both the address of the residence to be

searched and the name of the person it was directed toward. See

Search Warrant, attached hereto as Exhibit 1. The particularity

requirement as it pertains to multiple-occupancy structures was

thus met.

Defendant is a convicted felon. Prior to the search, he had

been arrested six times for the offenses of assault and battery,

disorderly conduct, operating after suspension, and shoplifting.

On March 21, 1995, he was convicted of larceny in Newton. Given

his prior history, officers had the requisite probable cause to

take possession of the contraband found in plain sight on the

premises.

Defendant's pattern of making fraudulent purchases at various Target stores, including the location in Somerville was well documented. Between March 1, 2004 and April 6, 2004, Defendant made ten fraudulent purchases in the Somerville store totaling $403.15 for items valued at several times that amount. In total, Defendant made twenty-nine separate fraudulent purchases at Target locations including Somerville, Everett, Watertown, and Saugus for $1,155.05. This evidence, together with Defendant's prior criminal record, established probable cause.

The police operated in accordance with the parameters set forth by the search warrant at all times and did not exceed its scope. The warrant specifies both the premises to be searched as well as the items expected to be found therein. The items to which the defense objects: the .38 caliber handgun, the .22 caliber rifle, and the counterfeit currency are all indicative of criminal activity. The Defendant was a known, convicted felon. The fact the items are not mentioned in the subsequent Somerville Police Department report is of little significance given local law enforcement protocol. The search was conducted in Revere. Officers of the Revere Police Department seized these items. Thus, the police acted in an objectively reasonable manner and well within the scope of the search warrant.

Alternatively, the search warrant specifically refers to "illegally obtained merchandise." The proceeds from the fraudulent purchases may have been used to procure the contraband. The seizure of this evidence, combined with Defendant's prior criminal record, falls under the "exigent circumstances" exception to the Fourth Amendment warrant requirement. There is no support for the Defendant's assertion that the items obtained as part of the search warrant were beyond its scope.

## **FACTS**

On April 1, 2004, security personnel at the Target Store in Watertown identified an individual, later identified as Hammam A. Mousli, in the computer software aisle. See Affidavit of Investigator for Target Corporation Matthew T. Townsend ("Townsend") dated 6/9/04, attached hereto as Exhibit 2. The suspect began to exhibit erratic behavior. Closed-circuit television surveillance was initiated. Surveillance recorded Defendant rapidly selecting numerous items of computer software and various other electronics merchandise without regard to the price. Included among the items purchased by the Defendant was a Texas Instruments calculator valued at $129.99. During checkout, the price of the calculator was displayed as $46.15. In total, the entire transaction was $186.02 less than the actual price of the articles selected.

3

Target personnel discovered the Defendant holding a sticker in his left hand. He was subsequently observed exiting the building and entering a late modeled Chevrolet Blazer with New Hampshire license plate #179 8326. Townsend was made aware of the incident and opened an internal investigation.

Based upon Townsend's prior training and experience, the practice of using preprinted Universal Product Codes (UPC) to make fraudulent purchases was well known. Often, perpetrators use the same UPC numbers in other fraudulent transactions. Using information obtained from the theft in Watertown, Townsend's investigation identified that the same UPCs had been used to make an additional six transactions involving the same products Defendant purchased in the Watertown store. Review of the video from those transactions determined the purchaser to be Defendant. Investigators concluded that Defendant would place false UPC tags on certain items, causing them to ring up at a lower price than the price at which they were actually being sold.

Townsend, upon conducting additional queries based upon both the UPC codes and the credit card numbers used in the transactions, uncovered a series of purchases which took place between March 1 and April 6, 2004 at Target Stores in Somerville, Everett, Watertown, and Saugus. Review of closed-circuit video confirmed Defendant to have made each of these purchases. See Point of Sale Transaction Report dated 3/9/04, attached hereto as

4

Exhibit 3.

On April 6, 2004, Defendant was arrested at the Target Store in Somerville by Officer Steve St. Hilaire of the Somerville Police Department for shoplifting by asportation.  Police confiscated two fraudulent preprinted UPC codes.  Defendant stated his address to be 19 Orvis Road in Revere.

On June 2, 2004, Somerville Police Detective Joseph E. McCain ("McCain") attended the first of two meetings with Assistant District Attorney Matthew Iverson of the Middlesex County District Attorney's Office and Mr. Townsend.  Mr. Townsend informed McCain of the ongoing series of fraudulent purchases made by Defendant using preprinted UPCs at various Target stores in the Commonwealth of Massachusetts.

On June 3, 2004, McCain, accompanied by Somerville Police Inspector Mario Oliveira ("Oliveira"), proceeded to 19 Orvis Road in Revere.  The purpose of the visit was to locate and describe Defendant's residence and to obtain the registration of any motor vehicles.  Officers identified a black 1989 Chevrolet Blazer with New Hampshire license plate #179 8326 registered to Mr. Walid Rifai of Manchester, NH.  This was the same vehicle driven by Defendant during the thefts.  Observed inside the vehicle were several plain brown U.S. Postal Service package boxes along with a roll of tape.

An exterior examination of the address indicated a two story

duplex residence.  The structure was noted to have two separate entrances.  A main entrance was in the center of the first floor and facing the street.  A secondary entrance was situated along the right side of the residence.

On June 9, 2004, Officers McCain and Oliveira drafted and executed a search warrant at 19 Orvis Road accompanied by officers of the Revere Police Department.  A search of Defendant's apartment produced extensive evidence of fraudulent purchases.  In addition, the officers recovered a .38 caliber handgun, a .22 caliber rifle, both within an unlocked closet within the apartment, and counterfeit United States currency.

## ARGUMENT

**I.    A "NEXUS" EXISTED BETWEEN THE ENUMERATED EVIDENCE OF THE OFFENSE AND THE LOCATION TO BE SEARCHED.**

### A.    The Totality Of The Circumstances Disclosed Demonstrate A Fair Probability That Evidence Of A Crime Would Be Found At 19 Orvis Road.

Sufficient probable cause to search a premises is determined by the "totality of the circumstances" as stated in the affidavit United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997). The affidavit is examined "in a practical, common-sense fashion and accord[ed] considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) (quoting United States v. Zayas-Diaz, 95 F.3d 105, 111)(1st Cir.

6

1996)(internal quotation marks omitted).

As evidenced by the CCTV surveillance tapes, Defendant had been identified as the perpetrator of the thefts in question, using fraudulent UPC codes to reduce the price of certain goods for purchase. Defendant was also observed exiting Target and entering a late modeled Chevrolet Blazer with New Hampshire license plate #179 8326. This same vehicle was found parked at 19 Orvis Road, the address where Defendant himself stated he lived. A convicted felon, Defendant's possession of firearms was thus illegal and provided probable cause for seizure. See 18 U.S.C. 922(g).

**B.   The Search Warrant Meets the Particularity Requirement.**

The description provided by McCain in his Affidavit and reflected in "Addendum B" of the Search Warrant, is sufficient for purposes of describing multi-occupancy structures.

The Fourth Amendment requires that a warrant describe with particularity the place to be searched. A warrant sufficiently particularizes the place to be searched if the executing officers "can with reasonable effort ascertain and identify the place intended." Steele v. U.S., 267 U.S. 498, 503 (1925). The instant warrant depicts a "two story duplex residence" with "two entrances." Although this suggests the potential presence of two separate units, it is not imperative that such a distinction be drawn. See U.S. v. Genao, 281 F.3d 305 (1st Cir. 2002) (defining

7

"single living unit" as synonymous with "residence of one unit or family"); see also U.S. v. Parmenter, 531 F. Supp. 975, 980-981 (D. Mass. 1982).

A twofold test is applied to assess the adequacy of the description of the searched location: "whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." U.S. v. Bonner, 808 F.2d 864, 866 (1st Cir. 1986), cert. denied, 481 U.S. 1006 (1987). The Defendant correctly points out that the warrant does not denote a particular subunit of the building at 19 Orvis Road. A search warrant directed against a multiple occupancy structure must describe the particular subunit to be searched specifically enough to preclude the search of the other units. U.S. v. Vaughan, 875 F. Supp. 36 (D. Mass. 1995).

The particularity requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched (Hammam Mousli). U.S. v. Leon, 468 U.S. 897 (1984); Bonner, 808 F.2d at 866. In Vaughan, this Court (Wolf, D.J.) stated, "A search warrant directed against a multiple-occupancy structure which fails to accurately describe the particular subunit to be searched will not ordinarily be held invalid when it adequately specifies the name of the occupant of

8

the subunit." 875 F. Supp. at 36.

Given that the instant warrant limits the area to be searched to that occupied by Defendant, it sufficiently particularizes the area inside the building. Further, because the warrant limited the search to premises occupied by and/or in the possession of Defendant, it is not reasonably probable that another area not belonging to Defendant would be searched.

The warrant at issue thus meets the twofold test depicted in Bonner.

## C. **Probable Cause**

Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213 (1983). A probable cause determination is twofold: historical facts leading up to the search and whether those facts, from the perspective of "an objectively reasonable police officer", amounts to probable cause. Ornelas v. U.S., 517 U.S. 690 (1996).

Facts supporting the establishment of probable cause may come from several sources. These sources include the personal observations of police officers, information from either a reliable known informant or independent sources that can be corroborated independently. See Draper v. U.S., 358 U.S. 307, 313 (1959). Defendant, known to officers as a convicted felon, was not authorized to possess a firearm. 18 U.S.C. 922(g).

Counterfeit currency is of its nature contraband. Probable cause was thus established regarding the confiscated firearms and counterfeit currency.

## II. THE POLICE OPERATED WITHIN THE CONFINES OF THE SCOPE OF THE WARRANT AT ALL TIMES.

### A. The Applicable Law

The authority to search under a valid warrant "is limited to the specific places described in it, and does not extend to additional or different places. U.S. v. Heldt, 668 F. 2d 1238 (D.C. Cir. 1981), cert. denied, 456 U.S. 926 (1982)(citing U.S. v. Principe, 499 F.2d 1135, 1137 (1st Cir. 1974)). However, a search of containers, chests, drawers, and closets made during the execution of a valid warrant does not require an additional warrant. See U.S. v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979). As stated by the Supreme Court:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

U.S. v. Ross, 456 U.S. 798, 820-821 (1982). The search warrant at issue here similarly permitted the officers to search in the places where the firearms and counterfeit currency was found.

On a motion to suppress, the defendant has the burden to show a violation of his Fourth Amendment rights. U.S. v. Dall,

10

608 F.2d 910, 914 (1st Cir. 1979). Defendant argues that the affidavit does not demonstrate the existence of his basement unit nor other items found at that location and thus the required nexus between the person or items sought and the place to be searched was absent. Defendant also alleges that affiant failed to make an effort to link the items sought to the place to be searched.

In Vaughan, cited by Defendant in the Motion to Suppress at 2, this Court granted the defendant's motion to suppress a shotgun seized from a locked storage room in the basement. The locked cabinet was controlled by someone other than the person whose possessions were the subject of the original warrant. 875 F. Supp. at 45. The court held that "a search of containers, chests, drawers and closets made during the execution of a valid warrant does not require an additional warrant. A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." Id. at 43 (citing Ross, 456 U.S. at 820-21.

As the precedents set forth above demonstrate, Defendant has not established that the search warrant was not specific as to the place to be searched.

11

**B.    Seizure Of The .38 Caliber Handgun And The .22 Caliber Rifle As Well As The Counterfeit U.S. Currency Were Justified Under The "Plain View" Doctrine.**

Defendant moves to suppress the articles seized during the execution of the search warrant on June 9, 2004. According to the "plain view" doctrine, seizures are lawful if (1) the seizing officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a lawful right to the object itself. U.S. v. Jones, 187 F.3d 210, 219-21 (1st Cir. 1999). The seizure of the weapons in the course of the lawful search of the premises satisfied all three criteria.

The Fourth Amendment protects citizens from unreasonable searches and seizures. Generally, a warrant based on information establishing probable cause is required to search a person or a place and to seize evidence found there. The warrant requirement exists to measure the probable cause asserted and to ensure that those searches deemed necessary are as limited as possible.

The "plain view" requirement is an exception to the warrant requirement. U.S. v. Johnston, 784 F.2d 416 (1st Cir. 1986). The Supreme Court has held that under certain circumstances, the police may seize evidence in plain view without a warrant. Horton v. California, 496 U.S. 128, 138-139 (1990). If entry upon the premises is authorized and the search which follows is valid, there is nothing in the Fourth Amendment which inhibits

12

the seizure by law enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated.

In this case, Officers McCain and Oliveira had prior justification for an intrusion during the course of which the two came across further evidence incriminating the accused. The extension of the original justification is legitimate where it is immediately apparent to the police that they have evidence before them. Johnston, 784 F.2d at 416. Whether the discovery of the weapon by the police was "inadvertent" is immaterial to the "plain view" inquiry. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. Id. The incriminating character of the evidence seized must be immediately apparent. Horton, 496 U.S. at 138-139. In the present case, the warrant authorized the police to search Defendant's entire apartment for evidence of UPC fraud. During that lawful search, the police seized the weapons and counterfeit currency in "plain view."

## CONCLUSION

For the reasons set forth above, the defendant's motion to

13

suppress should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: _____
GREGORY MOFFATT
617-748-3370

DATED: July 13, 2005

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the
person listed below a copy of the foregoing document by
depositing in the United States mail a copy of same in an
envelope bearing sufficient postage for delivery:

Francisco Fernandez, Esq.
Denner, Sayeg, LLP
4 Longfellow Place
Boston, MA 02114

This 13th Day of July 2005.

_____
GREGORY MOFFATT

14

# SEARCH WARRANT

G.L. c. 276, §§ 1-7

**TRIAL COURT OF MASSACHUSETTS**

_District_ COURT DEPARTMENT

_Somerville_ DIVISION

SEARCH WARRANT DOCKET NUMBER
_0410SW36_

**TO THE SHERIFFS OF OUR SEVERAL COUNTIES OR THEIR DEPUTIES, ANY STATE POLICE OFFICER, OR ANY CONSTABLE OR POLICE OFFICER OF ANY CITY OR TOWN, WITHIN OUR COMMONWEALTH:**

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is **PROBABLE CAUSE** to believe that the property described below:

- ☑ has been stolen, embezzled, or obtained by false pretenses.
- ☑ is intended for use or has been used as the means of committing a crime.
- ☑ has been concealed to prevent a crime from being discovered.
- ☑ is unlawfully possessed or concealed for an unlawful purpose.
- ☑ is evidence of a crime or is evidence of criminal activity.
- ☐ other *(specify)*_____

**YOU ARE THEREFORE COMMANDED** within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property:

_See Addendum A_

☑ **at:**

_New Hampshire Registration #1798326, on 1989 Chevrolet Blazer, registered to Walid R. Fai of 35 Lost st in Manchester N.H._

which is occupied by and/or in the possession of:

_Mr. Hannan Moush_

☑ **on the person or in the possession of:**

_Mr. Hannan Moush_

You ☐ are ☑ are not also authorized to conduct the search at any time during the night.

You ☐ are ☑ are not also authorized to enter the premises without announcement.

You ☐ are ☑ are not also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**YOU ARE FURTHER COMMANDED** if you find such property or any part thereof, to bring it, and when appropriate, the persons in whose possession it is found before the _Somerville_ Division of the _District_ Court Department.

| DATE ISSUED | SIGNATURE OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK |
|---|---|
| _6-9-04_ | X _[signature]_ |
| FIRST OR ADMINISTRATIVE JUSTICE WITNESS: _Maurice R. Flynn, III_ | PRINTED NAME OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK _Robert C. Iringele_ |

## APPLICATION FOR SEARCH WARRANT
G.L. c. 276, §§ 1-7

TRIAL COURT OF MASSACHUSETTS

_District_ COURT DEPARTMENT

_Somerville_ DIVISION

**NAME OF APPLICANT**

Joseph E. Mc Cain

**POSITION OF APPLICANT**

Sergeant

**SEARCH WARRANT DOCKET NUMBER**

04105CW37

I, the undersigned APPLICANT, being duly sworn, depose and say that:

1. I have the following information based upon the attached affidavit(s), consisting of a total of _14_ pages, _with attachments._ which is (are) incorporated herein by reference.

2. Based upon this information, there is PROBABLE CAUSE to believe that the property described below:

   ☑ has been stolen, embezzled, or obtained by false pretenses.
   ☑ is intended for use or has been used as the means of committing a crime.
   ☐ has been concealed to prevent a crime from being discovered
   ☑ is unlawfully possessed or concealed for an unlawful purpose.
   ☑ is evidence of a crime or is evidence of criminal activity.
   ☐ other (specify)

3. I am seeking the issuance of a warrant to search for the following property (describe the property to be searched for as particularly as possible): See addendum A

4. Based upon this information, there is also probable cause to believe that the property may be found (check as many as apply):
   ☑ at (identify the exact location or description of the place(s) to be searched): See addendum B

   which is occupied by and/or in the possession of: Mr. Harmon Housli.

   ☐ on the person or in the possession of (identify any specific person(s) to be searched): Mr. Harmon Housli

   ☑ on any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

THEREFORE, I respectfully request that the court issue a warrant and order of seizure, authorizing the search of the above described place(s) and person(s), if any, to be searched, and directing that such property or evidence or any part thereof, if found, be seized and brought before the court, together with such other and further relief that the court may deem proper.

   ☐ have previously submitted the same application.
   ☑ have not previously submitted the same application.

**PRINTED NAME OF APPLICANT**

Sergeant Joseph E. McCain

**SWORN AND SUBSCRIBED TO BEFORE**

X _Signature of Justice, Clerk-Magistrate or Assistant Clerk_

**SIGNED UNDER THE PENALTIES OF PERJURY**

X _Signature of Applicant_

DATE 6-9-04

## RETURN OF OFFICER SERVING SEARCH WARRANT

*A search warrant must be executed as soon as reasonably possible after its issuance, and in any case may not be validly executed more than 7 days after its issuance. The executing officer must file his or her return with the court named in the warrant within 7 days after the warrant is issued. G.L. c. 276, §3A.*

This search warrant was issued on _____, 19_____, and I have executed it as follows:
                                 DATE

The following is an inventory of the property taken pursuant to this search warrant:

1.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.

(attach additional pages as necessary)

This inventory was made in the presence of:_____

I swear that this inventory is a true and detailed account of all the property taken by me on this search warrant.

| SIGNATURE OF PERSON MAKING SEARCH | DATE AND TIME OF SEARCH | SWORN AND SUBSCRIBED TO BEFORE |
|---|---|---|
| X | 6/10/04   8:00 pm | X _Signature of Justice, Clerk Magistrate or Assistant Clerk_ |
| PRINTED NAME OF PERSON MAKING SEARCH | TITLE OF PERSON MAKING SEARCH | DATE SWORN AND SUBSCRIBED TO |
| Joseph E. M'Gin | Sergeant | 6-17-04 |





## City of Somerville
### Police Department
220 Washington Street
Somerville, MA 02143
(617) 625-1600

George F. McLean
Chief of Police

## RETURN OF OFFICER SERVING SEARCH WARRANT
## INVENTORY SHEET
## PAGE_____

1. Multiple priority mail/packing boxes - U.S. Post Office
2. 1 Box - cardboard addressed to Mouli
3. 1 complete radar set-up (MPH Industries & BEE) Model 36
4. O-zobe Radar, Series A
5. 1 Sony Net MD Walkman Type R with Cassette adapter
6. 1 Cardboard box w/ packing accessories
7. 1 Ink Date Stamp - Unopened
8. 1 Norton Anti Spam 2004 - Windows PC Software
9. 1 Whistler 1765 Radar Detector
10. 1 Clicker Garage door opener
11. 1 Techno Rear View Mirror w/ phone built-in
12. 1 Small copy of Koran leather bound
13. 1 Max Payle 2 PC-CD Rom Software/Game
14. 1 Netgear 54 Mbps Wireless USB 2.0 Adapter
15. 1 Best Buy bag w/ packing supplies
16. 1 U.S. P.S. Receipt from East Point Station Boston 6/8/04
17. 1 Quick Books Do it yourself payroll mailing/Addressed to Mou
18. 1 Mens leather Jacket
19. 1 Verizon Cellphone
20. 3 CD-R Re-Writables
21. 2 Audio Vox 22 x 38 Channel 2 Way Radios
22. 1 WiFi Finder Serial # B033403208 Model # 33003
23. 1 Costco Wholesale Card (Rabah Finaudi)
24. 1 BJ's Wholesale Card (Liban Soubahi)
25. Various Barcodes
26. Slip of Paper w/ # 781-389-0092 (Cell) Arabic Writing

(ATTACH ADDITIONAL PAGES IF NECESSARY)

Wordperfect/detschrl
03/27/01

Page 1




*City of Somerville*
*Police Department*
220 Washington Street
Somerville, MA 02143
(617) 625-1600

*George F. McLean*
*Chief of Police*

## RETURN OF OFFICER SERVING SEARCH WARRANT
### INVENTORY SHEET
### PAGE 2

1. 3 Pages of Rubber Gloves
2. 2 Car charger adaptors
3. 1 Walmart Bag w/ a stamp pad, car adaptor plug-in
4. light, "Fragile" Ink stamp, calculator, bottle of
5. unknown liquid w/ eyedropper
6. 1 Belt - $29.99 - bought for $3.—
7. 1 Replacement Belt #1.55
8. 1 Ziploc bag Telephone Cable Phone/Modem Cover
9. 1 Lexmark z25 Color Jet Printer
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____
26. _____

(ATTACH ADDITIONAL PAGES IF NECESSARY)

## ADDENDUM A

I.    Books, papers, documents, ledgers, receipts, written and/or computer records or accounts evidencing UPC switching or fraud, resale of switched merchandise, shipping of switched merchandise, returns of switched merchandise, or the storage or concealment of proceeds from UPC switching or fraud, including but not limited to: 1) documentation of UPC reproduction methods; 2) records of transactions, including credit and store receipts; 3) records of sales and shipments; 4) account information regarding internet auction/sales sites, postal, UPS and or shipping accounts; 5) inventories; 6) customer lists; 7) bank account records; 8) credit card or debit card records; 9) tax returns; 10) computers and data storage devices such as hard drives, modems, floppy drives, CD-ROM drives, backup drives, zip drives, palm pilots, computer discs, tapes, and CD-ROMs.

II.    Books, papers, documents, ledgers, receipts, written and/or computer records or accounts evidencing areas or properties used to store or conceal stolen merchandise, including but not limited to: 1) storage rental agreements; 2) safe deposit box rental agreements or keys; 3) post office box rental agreements or keys; 4) property deeds; 5) vehicle titles.

III.    Digital cameras, computers, printers, labels, scanners, and packaging used in UPC switching.

IV.    Papers and possessions identifying the person(s) having custody and control over the premises searched and its contents.

V.    Illegally obtained merchandise.

## ADDENDUM B

A residence located at 19 Orvis Road. 19 Orvis Road is a two story duplex residence brown and white in color and is located at the corner of Rumney Road and Orvis Road. There are two entrances to the residence. The main entrance is in the center of the first floor and is facing the street. The number 19 is located to the left side of this door. What appears to be a secondary entrance is located to the right side of the residence. The bottom section of the first floor front has a false brick covering. There are numerous windows on the walls of the dwelling, allowing for an unobstructed view of pedestrian and or vehicular traffic. The windows are covered on the inside by shades and blinds which are all closed. To the right of 19 Orvis Road is another single family dwelling with the number 11 to the left side of the door. The house is a white two story home. There are no other houses the street.

## AFFIDAVIT OF MATTHEW T. TOWNSEND

I, Matthew T. Townsend, do hereby depose and state that the following is true to the best of my knowledge and belief.

1.      I am an Investigator for Target Corporation in the state of Massachusetts. I have been investigating retail related crimes for 9 years and have been with Target Stores for over 6 years. I have been an Investigator concentrating on organized retail theft and fraud groups for over 3 years in Florida, Ohio, and Massachusetts. I have experience working investigations that involve identity theft, UPC fraud, fencing, check and credit fraud operations.

2.      On April 1, 2004, security personnel at the Target Store in Watertown, MA located at 550 Arsenal St. identified a middle-eastern male later identified as Hammam A. Mousli, who appeared nervous in the computer software aisle. CCTV surveillance was initiated and the male subject was observed rapidly selecting numerous items of computer software and other various electronics merchandise including a Texas Instrument calculator (valued at $129.99) with out regard for price. The subject then proceeded to the front lanes where a purchase in the amount of $46.15 was completed. It was discovered at the end of the transaction that the individual appeared to be holding a sticker in his left hand and the total transaction was $186.02 less than what was selected. The subject was observed exiting the building and entering a late modeled Chevy Blazer with a New Hampshire plate # 179 8326. The Blazer was then seen driving to the Best Buy in same parking lot of Arsenal Mall in Watertown, MA. The incident was then reported to myself for follow up.

3.      Based on my training and experience I have known that individuals that often use preprinted Universal Product Codes (UPC) often use the same codes to make purchases. With the information obtained from the known theft on 4/1/04 at 550 Arsenal St. Watertown, MA . I ran queries in the stores Digital Video recording device (Loronix) for transactions that involved the same UPC (201 02 0238 and 201 02 0964) within a month period. An additional 6 transactions were found involving the same product. Video was reviewed and identified the same male subject identified in the known theft that occurred on 4/1/04 making all the purchases identified during the UPC search.

| Date: | Time: | Purchase Amount: |
|---|---|---|
| 3/03/04 | 9:33pm | $41.98 |
| 3/3/04 | 10:00pm | $41.98 |
| 3/9/04 | 9:18pm | $31.47 |
| 3/20//04 | 9:50pm | $28.31 |
| 3/20/04 | 10:04pm | $32.31 |
| 3/24/04 | 9:45pm | $62.97 |
| 4/1/04 | 8:20pm | $46.15 |

* See attached spreadsheet identifying all known transactions.

1

4.    The Middle Eastern male identified as Hammam A. Mousli is in his mid 40's
       approx. 5ft. 10in. tall and 190lbs and was observed via CCTV review
       completing the transactions at the Target store in the Watertown, MA located
       on 550 Arsenal St. Three transactions were found where credit card # 4159
       8100 1121 7406 was used to make the purchase with the name Hammam A.
       Mousli. The credit card transactions occurred in the Watertown Target store
       on the following dates:

       | Date: | Time: | Purchase Amount: |
       |-------|-------|------------------|
       | 3/09/04 | 9:18pm | $31.47 |
       | 3/20/04 | 10:04pm | $32.31 |
       | 3/24/04 | 9:45pm | $62.97 |

5.    On April 2, 2004 additional queries were run based off two UPC's (201 02
       0238 and 201 02 0964) and the identified credit card number used in the
       Watertown, MA Target store, located at 550 Arsenal St.. Several transactions
       were identified at the Target store at 400 Lynn Fells Pkwy, Saugus, MA,
       Target Store at 1 Mystic View Road, Everett, MA, and the Target store on 180
       Somerville Ave, Somerville, MA. and were confirmed by video review as
       being completed by the same individual, Hammam A. Mousli

       Target Store T1441
       180 Somerville Ave.
       Somerville, MA 02143

       | Date: | Time: | Purchase Amount· |
       |-------|-------|------------------|
       | 3/1/04 | 4:17pm | $20.35 |
       | 3/2/04 | 6:35pm | $52.26 |
       | 3/2/04 | 8:36pm | $49.10 |
       | 3/3/04 | 5:08pm | $73.26 |
       | 3/6/04 | 9:03pm | $49.45 |
       | 3/7/04 | 7:53pm | $31.47 |
       | 3/9/04 | 10:01pm | $31.36 |
       | 3/15/04 | 7:02pm | $41.97 |
       | 3/18/04 | 9:52pm | $26.21 |
       | 4/6/04 | 3:45pm | $27.72 |

       Target Store T1229
       1 Mystic View Rd.
       Everett, MA 02149

       | Date: | Time: | Purchase Amount: |
       |-------|-------|------------------|
       | 3/1/04 | 3:40pm | $62.97 |
       | 3/2/04 | 5:45pm | $41.77 |
       | 3/7/04 | 8:37pm | $47.10 |
       | 3/9/04 | 2:51pm | $31.28– |

| 3/9/04 | 3:06pm | $20.98 |
| 3/15/04 | 5:06pm | $52.35 |
| 3/1804 | 9:16pm | $36.71 |

Target Store T-1290
400 Lynn Fells Parkway
Saugus, MA 01906

| Date: | Time: | Purchase Amount: |
| --- | --- | --- |
| 3/4/04 | 5:55pm | $55.41 |
| 3/14/04 | 7:19pm | $47.21 |
| 3/19/04 | 8:54pm | $45.10 |
| 3/20/04 | 6:30pm | $37.21 |
| 3/31/04 | 9:35pm | $51.20 |

* See attached spreadsheet identifying all known transactions in the Somerville, Everett, Saugus, and Watertown, MA Target stores.

6.    Information regarding the subject's method of operation was shared via email with surrounding Target stores. I was notified that an apprehension had occurred at the Target store located at 180 Somerville Ave. involving Hammam A. Mousli. Mr. Mousli was observed by store security placing pre printed UPC code, 201 02 0238, on merchandise and making a purchase of higher valued computer software creating a difference in cost of $68.02. I responded to store and noticed a late modeled Chevy Blazer with New Hampshire Tag # 179 8326 parked in the parking lot. This vehicle description matched the vehicle information obtained from the incident that occurred at the Target store in Watertown, MA on 4/1/04. I was able to see from the passenger's side window several ready to be shipped packages, packaging materials, packaging tape, Best Buy, Target and Wal-Mart bags in the front passenger seat. I noticed on one of the packages the return address 19 Orvis Rd. Revere, MA. was written on the box. * See attached photos.

7.    I later conducted an interview with the subject identified to me as Hammam A. Mousli. During the interview Mr. Mousli stated that this was his first time switching prices on product. Based on my investigation, I knew this to be false. I later asked Mr. Mousli where he learned how to create UPC's and how to switch product labels. Mr. Mousli stated he learned by watching television and using the Internet.

8.    While discussing the apprehension with the Somerville Police Department I learned the subject's address was 19 Orvis Rd. Revere, MA. The address provided by the Somerville Police matched the return address observed from the window of the Chevy Blazer found in the parking lot.

9.    Through my training and experience I have found that individuals that
perpetrate UPC fraud schemes have been known to keep the merchandise
taken, the proceeds, tools and devices to create UPC's such as computers,
printers, labels at their residence. Devices such as computers, digital cameras
are used to print and duplicate UPC codes. Proceeds from UPC fraud
schemes have been obtained through online auctions such as Ebay. * See
attached email outlining investigation summaries from across the country.

Sworn under pains and penalties of perjury on _6/ 9/ 04_

# Point of Sale Transaction Report

**Terminal ID:** 124
**Transaction #:** 2693

**Date Printed:** 4/12/04

**Type:** RETURN
**Ringing Associate:** 28388981
**Selling Associate:**

**Begin Time:** 03/09/04 14:51:47
**End Time:** 03/09/04 14:51:56
**Receipt ID:** 2-4069-1229-0124-2693-3

## Journal Text



```
*- - - - - POS VERSION 00(
03/09/04 1229 0124 2693
RECEIPT ID# 2-4069-1229-0)
R-EMP# 28388981      (RETU
ORIG RCPT ID# 2-4062-1229-
ORIG SALE DATE: 03/02/2004
002:S080010225     TI  BAI.
002:S080010225     TI  BAI:
ISO REQUEST SENT      : 02:
ISO RESPONSE RECEIVED : 02:
REF RC=1  VC=0  RE=0  NO EX
              RETURN SUBTO
T = MA TAX5.0000% ON      29
                         TO'
004:             CASH REFU
ISO REQUEST SENT      : 02:!
ISO RESPONSE RECEIVED : 02:!
REF RC=0  VC=0  RE=0  NO EXC
END OF TRANSACTION #2693   E
12830    -19640   0        -
```

1

# Point of Sale Transaction Report

**Terminal ID:**     87                              **Date Printed:** 4/12/04
**Transaction #:**   2964

**Type:**                SALE                        **Begin Time:**   03/09/04 15:06:11
**Ringing Associate:**   30139133                    **End Time:**     03/09/04 15:06:49
**Selling Associate:**                               **Receipt ID:**   2-4069-1229-0087-2964-7

## Journal Text



```
*- - - - - POS VERSION 000.012.063 - - - - *
03/09/04 1229 0087 2964    BEG TIME:03:06 PM
RECEIPT ID# 2-4069-1229-0087-2964-7
R-EMP# 30139133      (SALE)
001:S201020238     C AND C YURI    9.99    T
002:S201020964     C AND C RED     9.99    T
                    SUBTOTAL      19.98
T = MA TAX5.0000% ON    19.98      1.00
                       TOTAL      20.98
004:             CASH PAYMENT     21.00
005:                 CHANGE        0.02
STORE SURVEY PRINTED
END OF TRANSACTION #2964   END TIME:03:06 PM
305627    513653   205917    7203      0
```

1

# Point of Sale Transaction Report

**Terminal ID:**        124                          **Date Printed:** 4/12/04
**Transaction #:**      2693

**Type:**               RETURN                       **Begin Time:**  03/09/04 14:51:47
**Ringing Associate:**  28388981                     **End Time:**    03/09/04 14:51:56
**Selling Associate:**                               **Receipt ID:**  2-4069-1229-0124-2693-3

## Journal Text



```
*- - - - - POS VERSION 000.012.063 - - - - *
03/09/04 1229 0124 2693    BEG TIME:02:51 PM
RECEIPT ID# 2-4069-1229-0124-2693-3
R-EMP# 28388981      (RETURN)
ORIG RCPT ID# 2-4062-1229-0079-7826-5 (S)
ORIG SALE DATE: 03/02/2004
002:S080010225    TI  BAII     **PENDING**
002:S080010225    TI  BAII        29.79-  T
ISO REQUEST SENT    : 02:51:48 PM
ISO RESPONSE RECEIVED : 02:51:49 PM
REF RC=1  VC=0  RE=0  NO EXCEPTION
              RETURN SUBTOTAL     29.79-
T = MA TAX5.0000% ON    29.79      1.49-
                    TOTAL         31.28-
004:              CASH REFUND     31.28-
ISO REQUEST SENT    : 02:51:55 PM
ISO RESPONSE RECEIVED : 02:51:56 PM
REF RC=0  VC=0  RE=0  NO EXCEPTION
END OF TRANSACTION #2693    END TIME:02:51 PM
12830    -19640   0        -565     0
```

1